IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:17-CR-05 |
| | : (JUDGE MARIANI) |
| MARQUESE WHITTED, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On December 21, 2018, Defendant Marquese Whitted pleaded guilty to Count 1 of a multi-count Indictment, which charged Mr. Whitted and Derek Mountz with conspiracy to distribute more than 50 grams of methamphetamine and more than 100 grams of heroin in violation of 21 U.S.C. § 846. (*See* Docs. 1, 88, 91).

Prior to sentencing, the probation officer prepared a Presentence Report ("PSR") which attributed 100 grams of heroin and 448 grams of methamphetamine to Mr. Whitted, which resulted in a base offense level of 28. (*See* Doc. 98, ¶¶ 21, 27). The quantity of methamphetamine attributed to Mr. Whitted was founded, in part, on methamphetamine seized from his co-defendant Derek Mountz. (*See id.* at ¶¶ 7-18).

At the sentencing proceeding held on April 29, 2019, after hearing testimony from an undercover police officer, the Honorable A. Richard Caputo adopted the PSR.[1] In so doing, Judge Caputo made a finding that:

> As far as the quantities are concerned, I think the Government has established by a preponderance of the evidence that the conspiracy – the people in the conspiracy are responsible for 448 grams of methamphetamine.

(Doc 122, at 27). Judge Caputo thereafter sentenced Defendant Whitted to 96 months imprisonment. (Doc. 108).

On March 25, 2020, the Third Circuit Court of Appeals vacated and remanded the action to this Court for resentencing, finding that the sentencing judge "did not conduct the required inquiry into whether and to what extent Whitted's co-conspirator's [Mountz] drugs could be attributed to him for sentencing purposes." *United States v. Whitted*, 807 F.App'x 145, 146 (3d Cir. 2020).

The Third Circuit explained that "the District Court erred because it did not first make the necessary individualized inquiry to ensure that such attribution was proper." *Id*. at 147. Specifically, the Circuit Court explained:

> To justify accomplice attribution, a "stringent" standard must be met. [*United States v. Collado*, 975 F.2d 985, 991 (3d Cir. 1992)]. Under the Sentencing Guidelines, for a sentencing court to properly attribute an accomplice's drugs to a defendant, the court must consider whether the accomplice's drug activity was 1) "within the scope of the jointly undertaken activity[;]" 2) "in furtherance of that criminal activity[;]" and 3) "reasonably foreseeable in connection with that criminal activity[.]" U.S.S.G. § 1B1.3(a)(1)(B); *see also Collado*, 975 F.2d at 995. And, in assessing those three factors, "it is not enough to merely

---

[1] This action was re-assigned to the undersigned on March 25, 2020.

2

> determine that the defendant's criminal activity was substantial. Rather, a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical[.]" *Collado,* 975 F.2d at 995.

*Whitted,* 807 F.App'x at 147-148. The Court continued:

> The District Court here failed to undertake the searching and individualized inquiry required by *Collado.* After hearing testimony on the relevant drug quantity, the Court simply stated that "the people in the conspiracy are responsible for 448 grams of methamphetamine." (App. at 41.) The Court failed to make factual findings regarding the three factors enumerated above. . .

*Id.* at 148.

The Third Circuit nonetheless noted:

> . . . There is . . . evidence in the record that, if credited, indicates Whitted was personally responsible for possessing at least 448 grams of methamphetamine, regardless of any accomplice attribution. The District Court, however, made no findings with respect to that testimony.

*Id.* at 147 n.3.

The Circuit Court concluded that because the District Court failed to conduct the necessary inquiry, "at least on the record as it now stands, . . . the District Court's attribution of Mountz's drugs to Whitted was clearly erroneous" and "[w]ithout further development of the record, it is impossible to know how much, if any, of the methamphetamine possessed by Mountz could be properly attributable to Whitted." *Id.* at 148.

On March 10, 2022, this Court held an evidentiary hearing to fully resolve the issues identified by the Third Circuit, and specifically the proper amount of methamphetamine which was attributable to Defendant Whitted.

3

## II. LEGAL STANDARD

The calculation of the quantity of drugs attributable to a defendant under the Sentencing Guidelines must be based on the defendant's "relevant conduct." *United States v. Perez*, 280 F.3d 318, 352 (3d Cir. 2002); *United States v. Parnell*, 652 F.App'x 117, 120 (3d Cir. 2016). "In most narcotics cases to which the Sentencing Guidelines apply, the defendant's sentence depends to a great extent upon the quantity of drugs deemed 'relevant' to the offense." *United States v. Collado*, 975 F.2d 985, 990 (3d Cir. 1992).

"Relevant Conduct", set forth in USSG § 1B1.3(a)(1), includes:

> **(a)**. . . **(1) (A)** all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> **(B)** in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
> **(i)** within the scope of the jointly undertaken criminal activity,
> **(ii)** in furtherance of that criminal activity, and
> **(iii)** reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. . .

U.S.S.G. § 1B1.3(a)(1). *See also* § 1B1.3 cmt. note 3 ("With respect to offenses involving contraband (including controlled substances), the defendant is accountable under subsection (a)(1)(A) for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity under subsection (a)(1)(B), all quantities of contraband that were involved in transactions carried out by other participants, if those

transactions were within the scope of, and in furtherance of, the jointly undertaken criminal activity and were reasonably foreseeable in connection with that criminal activity.").

A court cannot merely attribute the full amount of the drugs distributed in the conspiracy to a particular defendant, without further analysis. Rather, a defendant "is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Perez*, 280 F.3d at 354 (citations omitted). As the Third Circuit explained in remanding this action,

> Under the Sentencing Guidelines, for a sentencing court to properly attribute an accomplice's drugs to a defendant, the court must consider whether the accomplice's drug activity was 1) "within the scope of the jointly undertaken activity[;]" 2) "in furtherance of that criminal activity[;]" and 3) "reasonably foreseeable in connection with that criminal activity[.]" U.S.S.G. § 1B1.3(a)(1)(B) . . . And, in assessing those three factors, "it is not enough to merely determine that the defendant's criminal activity was substantial. Rather, a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical[.]".

*Whitted*, 807 F.App'x at 147-148 (quoting *Collado*, 975 F.2d at 995).

The Government bears the burden of proving the quantity of drugs attributable to a defendant by a preponderance of the evidence. *See United States v. Williams*, 974 F.3d 320, 378-379 (3d Cir. 2020); *Collado*, 975 F.2d at 998. However, while "some degree of estimation" is permitted "in drug conspiracy cases because the government usually cannot seize and measure all the drugs that flow through a large drug distribution conspiracy[,] . . .

5

information used for sentencing must have sufficient indicia of reliability to support its probable accuracy." *Williams*, 974 F.3d at 378 (internal citations and quotation marks omitted). Nonetheless, "calculations of drug amounts may [not] be based on mere speculation." *Collado*, 975 F.2d at 998. "Indicia of reliability may come from, *inter alia*, the provision of facts and details, corroboration by or consistency with other evidence, or the opportunity for cross-examination." *United States v. Freeman*, 763 F.3d 322, 698-699 (3d Cir. 2014) (quoting *United States v. Smith*, 674 F.3d 722, 732 (7th Cir.2012)).

### III. ANALYSIS

Here, the PSR attributed 448 grams of methamphetamine to Mr. Whitted, as well as 100 grams of heroin, resulting in a base offense level of 28. (*See* Doc. 98, at ¶ 27). On appeal, Defendant did not challenge the heroin quantity determination, *Whitted*, 807 F.App'x at 146 n.1, and at issue at the evidentiary hearing held by this Court on March 10, 2022 was only the proper amount of methamphetamine attributable to Mr. Whitted for purposes of the sentencing calculation.

At the March 10, 2022, hearing, the Government called one witness, Detective Christopher Keppel, and the Defendant did not call any witnesses.

Upon consideration of Mr. Keppel's testimony, which the Court finds to be credible, the Court determines that the Government has met its burden of proof to establish that, at minimum, 448 grams of methamphetamine can be properly attributed to Defendant Whitted, but specifically that 945.5 grams of methamphetamine can be attributed to Mr. Whitted.

Mr. Keppel testified that he has received training "from the State Police, Attorney General's Office, DEA and FBI, involved in various aspects of drug investigations and prosecutions." (Unoff. Hr'g Tr., at 4). Mr. Keppel stated that he was a Pennsylvania State Trooper for 25 years, 20 years of which were spent in "exclusively undercover narcotics." (*Id.* at 3-4). While working undercover, Mr. Keppel testified that he has "de-briefed" "over a thousand" drug traffickers, and purchased drugs from drug traffickers "almost . . . on a weekly basis for 20 years." (*Id.* at 5). The drugs purchased included methamphetamine and Mr. Keppel confirmed that based on his training and experience, he is familiar with the quantities in which methamphetamine is regularly sold on the street and has visually seen various quantities of this drug. (*Id.* at 5-6). Further, the large majority of Mr. Keppel's testimony was based on his personal interactions with, and observations of, Defendant Whitted. Mr. Keppel's extensive experience in, and knowledge of, drug trafficking, his personal knowledge of the facts of the present case, as well as the consistency of his testimony both throughout this hearing and with the testimony provided at the sentencing hearing before Judge Caputo on April 29, 2019 (*see* Doc. 122), and Mr. Keppel's demeanor during the entirety of his testimony, form the basis for the Court's conclusion that Mr. Keppel's testimony bears significant indicia of reliability.

From April of 2016 through October of 2016, Mr. Keppel testified that he was working as an undercover FBI task force officer, and bought drugs, including methamphetamine, from Mr. Whitted. (Unoff. Hr'g Tr., at 6, 7). With respect to the weight of

methamphetamine, there are 28 grams in one ounce, and there are 16 ounces in one pound. (*Id.* at 6). Mr. Keppel testified to making the following methamphetamine purchases from Mr. Whitted:

- June 21, 2016: 3.5 grams
- June 28, 2016: 3.5 grams
- August 11, 2016: 7 grams (two separate purchases of 3.5 grams)
- August 16, 2016: 14 grams
- August 25, 2016: 3.5 grams
- September 8, 2016: 14 grams
- September 26, 2016: 14 grams
- October 25, 2016: 14 grams

(Unoff. Hr'g Tr., at 7-11, 13, 16; 21-23). Thus, the undisputed evidence of demonstrates that Mr. Keppel directly purchased 73.5 grams of methamphetamine from Mr. Whitted between June 21 and October 26, 2016.

However, in addition to the direct purchases of methamphetamine, Mr. Keppel also testified as to additional amounts of methamphetamine in Mr. Whitted's possession or otherwise within the scope of the conspiracy to distribute methamphetamine and heroin to which he pleaded guilty in this case.

8

Approximately 588 grams of methamphetamine, in addition to the 73.5 grams directly sold to Mr. Keppel, can be attributed to Mr. Whitted himself, without accounting for any accomplice attribution.

During the August 11, 2016 drug transaction, Mr. Keppel testified that Mr. Whitted informed him that "he had another ounce in Orwigsburg but he would have to go and get it." (Unoff. Hr'g Tr., at 8).

In the course of the August 16, 2016 transaction, Mr. Keppel testified that he spoke to Mr. Whitted "about quantity and how the drugs looked and my reselling it." (Unoff. Hr'g Tr., at 9). When Mr. Keppel told Mr. Whitted that "it's easier for me to resell the [chunky methamphetamine] crystals [than the methamphetamine powder], he said when he gets his next pound, he would take the crystals off the top and we would work it that way. . . ." (*Id.* at 9, 10). Mr. Keppel observed an additional 2-4 ounces of methamphetamine at the meeting that day. (*Id.* at 25). During the August 25, 2016 methamphetamine purchase, Mr. Keppel testified that he again observed Mr. Whitted take the 3.5 grams out of "a larger bag", which he stated contained between 2-4 ounces of methamphetamine. (*Id.* at 10, 26-27).

On September 21, Mr. Keppel stated that he spoke with Mr. Whitted about "obtaining a larger sum for me to resell", specifically that they negotiated "from a quarter pound to a pound." (Unoff. Hr'g Tr., at 11). During that meeting, Mr. Whitted advised Mr. Keppel that his supplier had been arrested with 2 ounces of methamphetamine and a gun, and that if he could reconnect with him, he would call Mr. Keppel with the methamphetamine, but that if

he could not, he would look for another supplier. (Unoff. Hr'g Tr., at 12). Mr. Keppel confirmed that Mr. Whitted's co-defendant, Derek Mountz, was arrested that day by the Pennsylvania State Police and that the police had seized 2 ounces of methamphetamine and a gun from Mr. Mountz. (*Id.* at 12).

On October 6 and 18, Mr. Keppel and Mr. Whitted again spoke about purchasing methamphetamine for Mr. Keppel to re-sell. At the time, Mr. Keppel "talked about the quarter pound, [Mr. Whitted] was wanting [Mr. Keppel] to get a pound. . . ." (Unoff. Hr'g Tr., at 13).

On October 25, 2016, Mr. Keppel had a planned buy of methamphetamine scheduled with Mr. Whitted at the Frackville Mall. (Unoff. Hr'g Tr., at 15). The police had surveillance at the Mall, on Mr. Mountz's house, and on the route to Mr. Mountz's house. (*Id.* at 15). Prior to the meeting, surveillance observed Mr. Whitted enter Mr. Mountz's house while another individual, Ms. Rohrbach, remained in Mr. Whitted's car. (*Id.* at 15-16). When Mr. Whitted left Mr. Mountz's house, he "came directly" to Mr. Keppel at the Mall. (*Id.* at 16). Although there was a brief period of time where the police ground surveillance did not have Mr. Whitted on camera between Mr. Mountz's house and the Frackville Mall, Mr. Keppel did not believe that the police plane surveillance ever lost sight of Mr. Whitted's vehicle (*Id.* at 30, 33-34). Mr. Whitted was arrested that day after selling Mr. Keppel methamphetamine and heroin. (Unoff. Hr'g Tr., at 16). The police recovered an additional 2 ounces of methamphetamine as well as heroin following a search of Mr. Whitted's car.

(Unoff. Hr'g Tr., at 16-17, 23). Ms. Rohrbach told Mr. Keppel that she and Mr. Whitted had gone to Mr. Mountz's house that day to get the methamphetamine that was sold to Mr. Keppel. (*Id.* at 17, 19). That same day, a search warrant was executed at Mr. Mountz's residence and approximately 8 ounces of methamphetamine were found in the home. (*Id.* at 18).

After the search warrant was executed on Mr. Mountz's house, a cooperating witness with "direct knowledge" informed Mr. Keppel that 10 to 20 ounces of methamphetamine had been exchanged over a period of time between Mr. Whitted and Mr. Mountz. (Unoff. Hr'g Tr., at 18, 28). That same witness informed Mr. Keppel that Mr. Mountz had received one pound of methamphetamine on October 25, prior to distributing it to Mr. Whitted and any other customers. (*Id.* at 18-19).

Here, the 1 ounce of methamphetamine which Mr. Whitted admitted to having on August 11, the additional 2-4 ounces of methamphetamine seen by Mr. Keppel on August 16 and August 25[2], and the 2 ounces of methamphetamine recovered from Mr. Whitted's vehicle on October 25, can all be directly attributed to Mr. Whitted. This amounts to at least 140 grams of methamphetamine.[3]

---

[2] Because the testimony was unclear as to whether the bag containing 2-4 ounces of methamphetamine was the same on both meetings, or whether the bag on August 25 contained additional methamphetamine or was otherwise different than the bag seen by Mr. Keppel on August, 16, the Court will only consider the 2-4 ounces once.

[3] To ensure strict adherence to the Third Circuit's caution that "calculations of drug amounts may [not] be based on mere speculation", *Collado*, 975 F.2d at 998, the Court will assume that the bag seen by Mr. Keppel only contained 2 ounces of methamphetamine.

11

In addition, the testimony demonstrates that Mr. Whitted told Mr. Keppel on August 16 that when he got his next pound, Mr. Whitted would take the methamphetamine crystals off the top for Mr. Keppel. Mr. Whitted and Mr. Keppel also negotiated several times over the larger sale of drugs to Mr. Keppel, with Mr. Keppel originally asking to buy a quarter of a pound, and Mr. Whitted repeatedly attempting to sell him as much as one pound of methamphetamine. These conversations demonstrate by a preponderance of the evidence that Mr. Whitted, whom the evidence shows obtained his methamphetamine from Mr. Mountz, had an agreement with Mr. Mountz allowing him access to at least one pound of methamphetamine between August and October of 2016 for sale to other individuals, and therefore, at minimum, one pound of methamphetamine (448 grams) can be attributed to Mr. Whitted as a part of the conspiracy to which he pleaded guilty.[4]

As a result of these findings, the Government has established by a preponderance of the evidence that approximately 661.5 grams of methamphetamine can be personally attributed to Mr. Whitted, even in the absence of any attribution of the methamphetamine found on Mr. Mountz or in Mr. Mountz's house.[5]

---

[4] The attribution of 448 grams of methamphetamine is in accordance with the Third Circuit's observation in its opinion that, as a result of testimony at the first evidentiary hearing that on two occasions "Whitted discussed having bought a pound of methamphetamine", there exists "evidence in the record that, if credited, indicates Whitted was personally responsible for possessing at least 448 grams of methamphetamine, regardless of any accomplice attribution," *Whitted*, 807 F.App'x at 147 & n.3.

[5] In reaching this determination, the Court totals the drug quantities reached as a result of the following findings set forth in this memorandum opinion:
- The 73.5 grams of methamphetamine directly purchased by Mr. Keppel from Mr. Whitted;
- The 1 ounce of methamphetamine which Mr. Whitted admitted to having on August 11, the additional 2 ounces of methamphetamine seen by Mr. Keppel on August 16 and August 25, and

However, Mr. Keppel's testimony also establishes by a preponderance of the evidence that the methamphetamine found in the possession of Mr. Mountz can be properly attributed to Mr. Whitted. Defendant Whitted provided information to Mr. Keppel on September 21 about the arrest of his supplier, which matched information known to Mr. Keppel about Mr. Mountz. As a result of this arrest, Mr. Whitted stated that he would need to reconnect with Mr. Mountz in order to get Mr. Keppel more methamphetamine. Furthermore, the evidence supports a finding by a preponderance of the evidence that Mr. Whitted obtained the methamphetamine sold to Mr. Keppel on October 25, as well as the additional methamphetamine found in his car that day, from Mr. Mountz at his house earlier that same day. As a result, the 2 ounces (56 grams) of methamphetamine seized from Mr. Mountz on September 21, as well as the 8 ounces (228 grams) of methamphetamine found following the search of Mr. Mountz's house can also be properly attributed to Mr. Whitted. This total of 284 grams of methamphetamine found on Mr. Mountz or in his home was within the scope of the jointly undertaken activity between co-defendants Whitted and Mountz, in furtherance of that criminal activity, and Mr. Mountz's possession of that methamphetamine was reasonably foreseeable in connection with the criminal activity undertaken by Mr. Whitted and Mr. Mountz.

---

the 2 ounces of methamphetamine recovered from Mr. Whitted's vehicle on October 25, which amounts to 140 grams of methamphetamine; and
- At least 448 grams of methamphetamine (one pound) which Mr. Whitted referenced purchasing and which he attempted to sell to Mr. Keppel on at least two occasions.

These quantities of methamphetamine result in a total of 661.5 grams.

Thus, because approximately 661.5 grams of methamphetamine can be personally attributed to Mr. Whitted and an additional 284 grams of methamphetamine seized from Mr. Mountz can be attributed to Mr. Whitted through accomplice attribution, the Court concludes that the Government has shown by a preponderance of the evidence that at least 448 grams of methamphetamine is properly attributed to Mr. Whitted, and specifically that Mr. Whitted is responsible for 945.5 grams of methamphetamine.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that 945.5 grams of methamphetamine can be attributed to Defendant Whitted for purposes of determining the sentencing guidelines.[6]

Robert D. Mariani
United States District Judge

---

[6] The Court notes that the finding herein that Mr. Whitted is responsible for 945.5 grams of methamphetamine alters his base offense level under the Sentencing Guidelines. Based on a determination that Mr. Whitted was responsible for 448 grams of methamphetamine and 100 grams of heroin, the PSR calculated that the offense involved 996 kilograms of converted drug weight, which amounted to a base offense level of 28 because the offense involved "at least 700 KG but less than 1,000 KG of Converted Drug Weight." (*see* Doc. 98, ¶ 27; U.S.S.G. §2D1.1). A finding that Mr. Whitted is responsible for 945.5 grams of methamphetamine, when combined with the 100 grams of heroin to which he does not object, equates to a converted drug weight of 1991 kilograms, resulting in a base offense level of 30. (*See* U.S.S.G. §2D1.1 (assigning base offense level of 30 where the converted drug weight is "[a]t least 1,000 KG but less than 3,000 KG")).